IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**ELIZABETH MOLINAS,**

        **Plaintiff,**

v.                                                                                      CIV 03-1033 LAM

**JO ANNE B. BARNHART,**
**Commissioner, Social Security**
**Administration,**

        **Defendant.**

# MEMORANDUM OPINION AND ORDER

    **THIS MATTER** is before the Court on Plaintiff's Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for a Rehearing (*Doc. 11*). In accordance with 28 U.S.C. § 636(c)(1) and FED. R. CIV. P. 73(b), the parties have consented to having the undersigned United States Magistrate Judge conduct all proceedings and enter final judgment in this case. The Court has reviewed Plaintiff's motion and the memorandum in support of the motion (*Doc. 12*), Defendant's response to the motion (*Doc. 15*), Plaintiff's reply to the response (*Doc. 16*), and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record (hereinafter, "*Record*" or "*R*."). For the reasons set forth below, the Court **FINDS** that Plaintiff's motion should be **GRANTED IN PART AND DENIED IN PART**, and this case **REMANDED** to the Commissioner of Social Security (hereinafter, "the Commissioner") for further proceedings, including a re-hearing, consistent with this Memorandum Opinion and Order.

## I. Procedural History

Plaintiff, Elizabeth Molinas, filed an application for supplemental security income payments on May 20, 1999, with a protected filing date of March 10, 1999. (*R. at 85-88.*) In connection with her application, she alleged a disability since May 29, 1998, due to lumbar disc disease, high blood pressure and depression. (*R. at 91.*) There is also evidence in the *Record* that Plaintiff suffers from back pain, dizziness, feeling faint, methadone dependence, a history of opiate dependence, panic attacks, headaches and hepatitis. (*R. at 91, 179, 433, 437.*) Plaintiff's application was denied at the initial and reconsideration levels. (*R. at 38, 39.*) An administrative law judge conducted an initial hearing on August 31, 2001. (*R. at 393-425.*) On March 21, 2002, the administrative law judge issued his decision which was unfavorable to Plaintiff. (*R. at 43-49.*) Plaintiff filed a request for review dated May 17, 2002. (*R. at 76-78.*) By order dated October 4, 2002, the Appeals Council granted Plaintiff's request for review, vacated the decision of the administrative law judge, and remanded Plaintiff's case to a second administrative law judge (hereinafter, "ALJ") for further proceedings.[1] (*R. at 74-75.*)

The ALJ conducted a second hearing on March 10, 2003. (*R. at 426-443.*) Plaintiff and a vocational expert (hereinafter, "VE") were present and testified at the hearing. (*Id.*) Plaintiff was represented by an attorney at the hearing. (*R. at 428.*) On April 25, 2003, the ALJ issued his decision

---

[1] Among other things, the order of remand required the administrative law judge to: (1) "[o]btain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14);" (2) use hypothetical questions that "reflect the specific capacity/limitations established by the record as a whole;" and (3) before relying on the vocational expert evidence, "identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p)." (*R. at 75.*)

in which he found that Plaintiff was not disabled at step five of the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920. (*R. at 17-23.*) The ALJ made the following findings, *inter alia,* with regard to Plaintiff pursuant to the sequential evaluation process: (1) she has not engaged in substantial gainful activity since the alleged onset of disability; (2) she has an impairment or a combination of impairments considered "severe;"[2] (3) her medically determinable impairments do not meet or medically equal one of the listed impairments; (4) her allegations regarding her limitations are not totally credible for the reasons set forth in the ALJ's decision; (5) the ALJ carefully considered all of the medical opinions in the record recording the severity of her impairments; (6) she has the residual functional capacity (hereinafter, "RFC") for "light work," and she can climb stairs only occasionally and cannot climb ladders, she can occasionally bend and stoop, she has "borderline intellectual functioning," she has moderate limitations in her abilities to interact with others including the general public and co-workers and supervisors, and she has mild limitations in her abilities to maintain attention, follow instructions and respond appropriately to supervision; (7) she is unable to perform any of her past relevant past work; (8) she is a "younger individual between the ages of 18 and 44;" (9) she has a "limited education;" (10) she has "no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case;" (11) she has the RFC to perform a significant range of "light work;" (12) although her exertional limitations do not allow her to perform the full range of light work, using *Medical-Vocational Rule 202.17* as a framework for decision-making there are a significant number of jobs in the national economy that she could perform including work as a laundry spotter, laundry folder and ticket taker; and (13) she was not under a

---

[2] The ALJ found that Plaintiff had the severe non-listing-level impairments of borderline intellectual functioning, methadone dependence with a history of heroin dependence, depression and small disc protrusions with associated back pain. (*R. at 18-19, 22.*)

"disability," as defined in the Social Security Act, at any time through the date of the ALJ's decision. (*R. at 21-23.*)

After the ALJ issued his decision, Plaintiff filed a request for review dated June 16, 2003. (*R. at 11-13*.) On August 8, 2003, the Appeals Council issued its decision denying Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (*R. at 7-10.*) On September 5, 2003, Plaintiff filed her complaint in this action. (*Doc. 1.*)

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied the correct legal standards. *See Hamilton v. Sec'y. of Health & Human Services*, 961 F.2d 1495, 1497-1498 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Sec'y. of Health and Human Services*, 985 F.2d 1045, 1047 (10th Cir. 1993) (quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983) (further citation omitted)). Substantial evidence is more than a mere scintilla of evidence but less than a preponderance. *See, e.g., Sisco v. U. S. Dep't. of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993). In making the substantial evidence determination on review, the Court may not re-weigh the evidence or substitute its judgment for that of the Commissioner. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

## III.  Plaintiff's Age, Education, Work Experience and Medical History

Plaintiff was born on August 22, 1962. (*R. at 86.*) On the date of the ALJ's decision she was forty years old. Plaintiff has a tenth grade education. (*R. at 97.*) The ALJ found that Plaintiff had past work as a cashier. (*R. at 20, 92.*)

In October of 1999, Plaintiff was physically evaluated by consulting physician G.T. Davis, M.D. (*R. at 170-176.*) Dr. Davis examined Plaintiff and prepared a report of his evaluation. (*Id.*) In the summary section of his report, he stated that Plaintiff reported "onset of back pain a few years ago, and a history of addiction to prescription medications and heroin, " but she "has been on methadone since April of 1999." (*R. at 172.*) He also stated that he "did not see any significant objective findings on the neurological or orthopedic examination reflecting arthritis, or radiculopathy or other potentially significant conditions." (*Id.*) His statement regarding Plaintiff's ability to do work-related activities was as follows:

> Based upon the current examination, in absence of objective findings, I do not have a medical basis to conclude that Ms. Molinas could not be more active or engage in work activities if she wished to. Please correlate with any other data, however.

(*Id.*)

In October of 1999, a state agency physician, Melvin L. Golish, M.D., completed a "Physical Residual Functional Capacity Assessment" form for Plaintiff. (*R. at 190-197.*) Dr. Golish reviewed the evidence in Plaintiff's file and concluded that she was limited to work at the "light exertional level." (*R. at 195.*)

In October of 1999, Plaintiff was evaluated by psychiatrist Rene Gonzales, M.D. (*R. at 177-180.*) Dr. Gonzales interviewed Plaintiff and prepared a report of his evaluation. (*Id.*) Dr. Gonzales diagnosed Plaintiff with major depression (recurrent episode), methadone dependence, history of opiate dependence, panic attacks, lumbar disk disease and hypertension. (*R. at 179.*) He assigned

Plaintiff a present Global Assessment of Functioning (hereinafter, "GAF")[3] score of 50, and a GAF score of 70 in the past year.  (*Id.*)

In October of 2001, Plaintiff was evaluated by psychologist James Harrington, Ph.D. (*R. at 368-392.*)  Dr. Harrington interviewed Plaintiff on two occasions, reviewed the reports of Dr. Davis and Dr. Gonzales, administered various psychological tests and prepared a report of his evaluation.  (*Id.*)  Dr. Harrington diagnosed Plaintiff with major depression (recurrent episode), methadone dependence, history of opiate dependence and chronic back pain.  (*R. at 373.*)  He assigned Plaintiff a current GAF score of 55.  (*Id.*)    Dr. Harrington also completed a "Psychiatric-Psychological Source Statement of Ability to do Work-Related Activities (Mental-MSS)" form (hereinafter, "Mental-MSS Form") in which he evaluated Plaintiff's ability to perform the following activities: understanding and remembering instructions, sustained concentration and task persistence, social interactions and adaptation.  (*R. at 365-367.*)  He found that Plaintiff was "mildly limited" in her ability to understand and remember detailed or complex instructions, understand and remember very short and simple instructions, attend and concentrate, adapt to changes in the workplace and be aware of normal hazards and react appropriately.  (*R. at 365-366.*)  The Mental-MSS Form defined "mildly limited" to mean "the effects of the mental disorder do not significantly limit the individual from consistently and usefully performing the activity."  (*R. at 365*.)  He found that Plaintiff was

---

[3]The GAF Scale is a rating system on a scale of zero to one-hundred that is used by clinicians to assess an individual's overall level of functioning.  It is used to rate individuals with respect to their psychological, social and occupational functioning.  The GAF Scale is divided into ten ranges of functioning and each ten-point range in the GAF Scale has two components.  The first component covers symptom severity and the second component covers functioning.  The final GAF Scale rating always reflects whichever of the two is worse.  In most instances, GAF Scale ratings should assess an individual's level of functioning at the time of the evaluation. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 - 34 (4th ed., Text Revision, 2000) (hereinafter "DSM-IV-TR").

"moderately limited" in her ability to interact with the public, co-workers and supervisors. (*R. at 366.*)  The Mental-MSS Form defined "moderately limited" to mean "the evidence supports the conclusion that the individual's capacity to perform the activity is impaired but the degree/extent of the impairment needs to be further described." (*R. at 365.*)  Dr. Harrington further described Plaintiff's moderate limitations in her social interactions as follows: "Her mood was brittle & she cried easily. Her depression & emotional fragility, if untreated, would affect her interpersonal interactions." (*R. at 366.*)  For all other rated activities listed on the Mental-MSS Form, Dr. Harrington found that Plaintiff was "not limited." (*R. at 365-366.*)  The Mental-MSS Form defined "not limited" to mean "the mental disorder does not affect the ability to perform this activity." (*R. at 365.*)

Dr. Harrington found Plaintiff's general cognitive ability to be in the "borderline range of intellectual functioning, as measured by the Wechsler Adult Intelligence Scale - Third Edition (WAIS-II)." (*R. at 370.*)  Her full-scale IQ was 79, with overall thinking and reasoning abilities exceeding those of approximately 8% of adults her age, but Dr. Harrington cautioned that "[h]er level of depression may have affected her performance which may warrant caution in the interpretation of her scores." (*Id.*)  He also noted with regard to his testing of Plaintiff's intellectual abilities that her test results suggested "that her performance was affected by her mood and feelings and that her overall functioning may be somewhat higher than the present test results." (*R. at 372.*)    In October of 1999, a state agency psychologist, J. LeRoy Gabaldon, Ph.D., completed a "Psychiatric Review Technique" form for Plaintiff. (*R. at 181-189.*)  Dr. Gabaldon reviewed the evidence in Plaintiff's file and concluded that she suffered from major depression and substance use/abuse but the functional limitations of her mental impairments did not satisfy the requirements of the listings. (*R. at 182, 188.*)

## IV.  Discussion/Analysis

The ALJ denied Plaintiff benefits at step five of the five-part sequential evaluation process for determining disability. The Commissioner has the burden at this step to show that Plaintiff can perform other work available in significant numbers in the national economy considering her RFC, age, education and past work experience. *See Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir.1984); 20 C.F.R. § 416.920. In denying Plaintiff benefits at step five, the ALJ relied on the testimony of the VE and used the *Medical-Vocational Guidelines* [4] (hereinafter, "*Guidelines*") as a framework for decision-making. (*R. at 22*.) The ALJ concluded that Plaintiff was not disabled within the framework of *Medical-Vocational Rule 202.17* of the *Guidelines* because she had the RFC to perform a significant range of light work and there were a significant number of jobs in the national economy that she could perform, including laundry spotter, laundry folder and ticket taker. (*R. at 22-23*.)

Plaintiff contends that the ALJ erred at step five of the sequential analysis. Specifically, Plaintiff argues that the ALJ: (1) relied on the VE's answer to the ALJ's first hypothetical question which failed to accurately describe Plaintiff's mental impairment; (2) relied on testimony by the VE that Plaintiff could perform the jobs of laundry spotter and laundry folder without explaining discrepancies between the VE's testimony and these jobs as defined in the DOT;[5] (3) relied on testimony by the VE that Plaintiff could perform the job of ticket taker when that job does not exist in sufficient numbers in the regional economy; and (4) erred in his assessment of Plaintiff's credibility

---

[4]The *Guidelines* are at 20 C.F.R., Pt. 404, Subpt. P, App. 2.

[5]All references in this Memorandum Opinion and Order to DOT are to the U.S. Department of Labor's *Dictionary of Occupational Titles*, Fourth Edition, Revised 1991.

based on her failure to seek medical treatment. Defendant argues that the ALJ applied the correct legal standards and correctly determined that Plaintiff is not disabled based on substantial evidence.

## A. ALJ's Hypothetical Question to VE

Plaintiff argues that the ALJ failed to accurately describe Plaintiff's mental impairment in his first hypothetical question to the VE. Therefore, Plaintiff argues that the VE's testimony in response to that question is not substantial evidence for the ALJ's finding that Plaintiff is not disabled. Defendant argues that the ALJ adequately accounted for Plaintiff's mental impairment in his first hypothetical question to the VE.

In this case the ALJ properly assessed Plaintiff's mental RFC in accordance with 20 C.F.R. § 416.945(c). Citing the Mental-MSS Form completed by Dr. Harrington (*R. at 365-367*), the ALJ found, consistent with Dr. Harrington's assessment, that Plaintiff had "borderline intellectual functioning," "moderate limitations" in the ability to interact with others including the general public, co-workers and supervisors, and "mild limitations" in the ability to maintain attention, the ability to follow instructions and the ability to respond appropriately to supervision. (*R. at 22.*) However, the ALJ failed to accurately describe those limitations in his first hypothetical question to the VE.

The ALJ's first hypothetical question to the VE was as follows:

> Q    Okay. Now, I would like for you to take into account the following hypothetical, if you would, please. Assume a limitation to light work, the exertional level being light. Assume that the person is limited in terms of climbing stairs to no more then [sic] occasional and no climbing of ladders or things of that sort. No more then [sic] occasional stooping, bending, crouching, crawling, balancing or kneeling. The person functions at what's labeled as a borderline intellectual level of functioning. **That the person has a moderate limitation, which I noted as satisfactory or fair.**
>
> A    Could you repeat that?

9

>Q **The person has the following limitations that are moderate**.
>
>A Okay.
>
>Q **I equate that with limited to satisfactory and also as fair**. And that is the ability to relate to coworkers, deal with the public, interact with supervisors. **The person has mild limitations which is [sic] term I really use, but I equate it somewhere between good and limited to satisfactory or fair. Kind of a, I call it the never, never land area kind of between those two. It's kind of like when I get these doctor's assessments where they mark them one side of the blank or the other [sic] wants you to balance it. So mild here would be good and fair would be satisfactory.** And that's maintain attention and concentration, all complex and detailed instructions, all simple instructions, respond appropriately to changes in the work environment, and recognize hazards and respond appropriately. **With taking into account those limitations, would there be work that could be performed?**" (*Emphasis added.*)

(*R. at 438-439.*) In response to this question, the VE testified that Plaintiff could perform the jobs of laundry spotter, laundry folder and ticket taker. (*R. at 439-440.*)

Plaintiff argues that the ALJ's first hypothetical question failed to accurately describe Plaintiff's mental impairment. The Court agrees. Instead of using the same definitions of "mildly limited" and "moderately limited" contained in the Mental-MSS Form that Dr. Harrington used to assess Plaintiff's ability to do work-related activities, or some other definitions based on evidence in the *Record* or applicable law, the ALJ paraphrased Dr. Harrington's findings, characterizing them, without definition or clear explanation, as "satisfactory," or "fair," or "good," or "somewhere between good and limited to satisfactory or fair," or in "the never, never land area kind of between those two." (*R. at 439.*)

Testimony elicited by hypothetical questions to a VE must "relate with precision all of a claimant's impairments" in order to constitute substantial evidence to support a decision.

*Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (quoting *Ekeland v. Bowen*, 899 F.2d 719, 724 (8th Cir. 1990). In this case, the ALJ's first hypothetical question to the VE should have accurately described the mild and moderate limitations identified in the ALJ's mental RFC assessment. The ALJ's failure to do so requires remand and also renders the ALJ's finding that Plaintiff was not disabled at step five not supported by substantial evidence. The descriptions of "mild" and "moderate" limitations in the ALJ's first hypothetical question to the VE did not accurately relate Plaintiff's mental impairment based on the *Record* of this case. On remand, the ALJ's hypothetical question to the VE must accurately describe Plaintiff's mental limitations with sufficient detail for the VE to render an accurate opinion that takes those limitations into account.

### B. Plaintiff's RFC to Perform Other Jobs

Plaintiff argues that the ALJ erred in failing to explain discrepancies between the VE's testimony and the jobs of laundry spotter and laundry folder as defined in the DOT.[6] Additionally, Plaintiff argues that the job of ticket taker does not exist in sufficient numbers in the regional economy to be considered a significant number of jobs at step five of the sequential evaluation process.[7] Defendant argues that the ALJ properly relied on the VE's testimony.

Because the ALJ's re-examination of the VE on remand could impact the VE's opinion of Plaintiff's ability to perform the jobs of laundry spotter and laundry folder, the Court makes no

---

[6] Plaintiff also argues that her IQ score of 79 is in the bottom 8% of the population, thereby excluding her from having the cognitive ability to perform the jobs of laundry sorter, laundry folder and ticket taker. Because this case is being remanded for further questioning of the VE, the Court need not decide this issue; however, Plaintiff's argument is questionable given Dr. Harrington's caveats regarding the accuracy of Plaintiff's IQ test results. (*R. at 370, 372.*)

[7] The VE testified that on a national level there are 56,000 ticket taker jobs available and on a regional level (New Mexico) there are 130 ticket taker jobs available. (*R. at 440.*)

11

determination regarding the discrepancies asserted by Plaintiff concerning those jobs. However, the Court notes that Plaintiff is correct that the job of laundry spotter (*DOT* 361.684-018) is semi-skilled work,[8] and the ALJ failed to explain the VE's testimony that this is an unskilled job.[9] (*R. at 440.*) Additionally, Plaintiff is correct that the job of laundry folder (*DOT* 361.587-010), requires frequent stooping which is inconsistent with the ALJ's finding and hypothetical assumption that Plaintiff is physically limited to occasional stooping.[10] (*R. at 22, 439.*) Therefore, on remand the jobs of laundry spotter and laundry folder should be eliminated from consideration unless the VE can explain these inconsistencies. *See Haddock v. Apfel*, 196 F.3d. 1084, 1091 (10th Cir. 1999) (ALJ must investigate and obtain a reasonable explanation of any conflict between the *Dictionary of Occupational Titles* and a vocational expert's testimony before the ALJ can rely on the expert's testimony). *See also Social Security Ruling 00-4p*, 2000 WL 1898704 at *1 (2000) (before relying on vocational expert evidence to support a disability determination, adjudicators must obtain a reasonable explanation for any conflicts between such evidence and information in the DOT). With regard to the job of ticket taker, the Court need not address the issue of whether this job exists in significant numbers in the

---

[8] The job of laundry spotter has a specific vocational preparation time of "3," which corresponds to semi-skilled work. *See DOT* (361.684-018); *Social Security Ruling 00-4p*, 2000 WL 1898704 at *3 (2000).

[9] Although the ALJ found that Plaintiff had past work experience as a cashier which was semi-skilled, he did not determine whether or not she had transferable skills from that job. (*R. at 20, 22.*)

[10] Defendant argues that there are other light jobs in the laundry industry that Plaintiff can do requiring no stooping such as flatwork finisher (DOT 363.686.010) and folder (DOT 369.687.018). Defendant asks the Court to substitute these jobs for the job of laundry folder and find that Plaintiff can perform these jobs in the absence of VE testimony. The Court rejects this argument. The ALJ's decision must stand on its own and the Court will not re-write his decision to include vocational evidence outside the *Record*. *See Allen v. Barnhart*, 357 F.3d 1140 (10th Cir. 2004).

regional economy because the ALJ's re-examination of the VE on remand could impact the VE's opinion of Plaintiff's ability to perform this job.

### C. Assessment of Plaintiff's Credibility

Plaintiff argues that the ALJ erred in assessing Plaintiff's credibility based on her failure to seek medical treatment. The ALJ evaluated the evidence and concluded that Plaintiff's allegations regarding her limitations were not totally credible. (*R. at 22*.) Therefore, the ALJ substantially discounted Plaintiff's complaints of disabling pain and limitation. (*R. at 20.*)

"Credibility determinations are peculiarly the province of the finder of fact", and will not be overturned if supported by substantial evidence. *Diaz v. Sec'y. of Health and Human Services*, 898 F.2d 774, 777 (10th Cir. 1990). However, such deference is not absolute. *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993). "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988).

Plaintiff argues that the ALJ improperly considered the fact that Plaintiff did not seek indigent medical care available in her community in assessing her credibility.[11] However, it was not improper for the ALJ to consider this fact in assessing Plaintiff's credibility. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (administrative law judge could consider claimant's failure to seek indigent medical care in assessing his credibility). In this case, Plaintiff's failure to seek medical care was only one factor considered by the ALJ in assessing her credibility and the Court finds that the ALJ properly considered this factor in his evaluation of Plaintiff's credibility. (*R. at 19-20.*)

---

[11]The ALJ found that Plaintiff had not sought indigent medical care that was available in her community and Plaintiff does not dispute this fact. (*R. at 19, 177-178, 373.*)

13

## IV.  Conclusion

The ALJ properly analyzed Plaintiff's credibility based on her failure to seek medical treatment.  Therefore, the Court will **DENY** Plaintiff's motion on that issue.  However, the ALJ failed to accurately describe Plaintiff's mental impairment in his first hypothetical question to the VE.  Accordingly, the Court will **GRANT** Plaintiff's motion on that issue and remand this case for further proceedings, including a re-hearing, for the ALJ to re-examine the VE with a hypothetical question that accurately describes Plaintiff's mental impairment.

**WHEREFORE, IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for a Rehearing (*Doc. 11*) is **GRANTED IN PART AND DENIED IN PART** and this case is **REMANDED** to the Commissioner for further proceedings, including a re-hearing,  consistent with this Memorandum Opinion and Order.

_____
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**